UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JESSICA MARIA SKRINE,

                Plaintiff,                     **MEMORANDUM AND ORDER**
                                                 22-CV-04022 (OEM) (JRC)

        -against-


THE CITY OF NEW YORK, LOUIS A. MOLINA,
individually and in his capacity as Commissioner of the
New York City Department of Correction, WARDEN
SHARISSA WALKER, DEPUTY WARDEN
WILLIAM PAYNE, JR., and DEPUTY WARDEN
BRIAN CALLOWAY,

                Defendants.
-----------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

On July 8, 2022, plaintiff Jessica Maria Skrine ("Skrine" or "Plaintiff") commenced this action against the City of New York (the "City"), Louis A. Molina ("Molina"), Warden Sharissa Walker ("Walker"), Deputy Warden William Payne, Jr. ("Payne"), and Deputy Warden Brian Calloway ("Calloway"). *See generally* Complaint, ECF 1. Plaintiff filed an amended complaint on January 11, 2023, and a second amended complaint on October 4, 2023. *See* First Amended Complaint, ECF 12; Second Amended Complaint ("SAC"), ECF 20. In the SAC, Plaintiff alleges (1) Title VII gender discrimination; (2) discrimination under the Americans with Disabilities Act (the "ADA"); (3) interference and retaliation pursuant to the Family and Medical Leave Act; (4) Title VII gender, race, and ethnicity discrimination; (5) Title VII gender and race discrimination (a claim which appears to be duplicative of Plaintiff's fourth claim); (6) Title VII retaliation; (7) pattern and practice discrimination under 42 U.S.C. § 1983; (8) hostile work environment under the New York State Human Rights Law ("NYSHRL"); (9) retaliation under the NYSHRL; (10) hostile work environment under the New York City Human Rights Law ("NYCHRL"); (11)

1

retaliation under the NYCHRL; and (12) NYSHRL/NYCHRL discrimination and retaliation against the individual defendants.

On September 15, 2023, Plaintiff withdrew the following six causes of action with prejudice: First (Title VII gender discrimination), Fourth (Title VII gender and race discrimination), Fifth (Title VII gender and race discrimination), Seventh (pattern and practice discrimination under 42 U.S.C. § 1983), Eighth (NYSHRL hostile work environment), and Tenth (NYCHRL hostile work environment). *See* September 15, 2023, Letter, ECF 19.  In her opposition to the City's motion to dismiss, Plaintiff stated that she "does not oppose the City's motion to dismiss the Second Claim for Relief for discrimination in violation of the Americans With Disabilities Act."  Plaintiff's Memorandum of Law in Opposition to the City's Motion to Dismiss ("Opp."), ECF 25 at 4 n.1.  Accordingly, Plaintiff's remaining claims are her Third (FMLA interference and retaliation), Sixth (Title VII retaliation), Ninth (NYSHRL retaliation), Eleventh (NYCHRL retaliation), and Twelfth (NYSHRL/NYCHRL discrimination and retaliation against the individual defendants).

Before the Court is the City's motion to dismiss, filed on February 5, 2024.  Memorandum of Law in Support of the City's Motion to Dismiss ("MOL"), ECF 24-2.  For the reasons that follow, the City's motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiff began working as a New York City Correction Officer on April 26, 2012, and was promoted to Captain on September 28, 2018.  SAC at 3.  On May 14, 2019, Plaintiff alleges that she "was assaulted by an inmate after being struck multiple times in the facial area causing [her] to fall to the floor." *Id*. at 4.  After leaving "leaving the facility of her assigned tour in an ambulance for medical attention," Plaintiff alleges that she "had to return to GRVC to submit a use of force

report." *Id*.   After submitting this report, Plaintiff alleges that she viewed video footage of the incident "and observed that the assault was avoidable and that she was inappropriately escorted by her superior DW Payne who could be seen touching [her] in the breast area and holding [her] in a sexually suggestive position." *Id*. at 5.   Plaintiff alleges that she "immediately made a complaint to the Correction Department" and that "Warden Walker observed these events and did not take any corrective action." *Id*.   Plaintiff alleges that she filed an "initial EEO complaint in May 2019." *Id*. at 6.

Plaintiff alleges that she "took medical leave in August 2019 as a result of the physical injuries and psychological trauma which resulted from her assault" and "was never able to return to work in either a full or limited capacity." *Id*. at 5.   During her period of medical leave, Plaintiff alleges that she "was the subject of home visits 3 to 4 times a week by the Correction Department." *Id*.

Plaintiff alleges that on October 3, 2020, she "found a note from Corrections Department Health Management Division stating that Deputy Warden Clyde did a home visit and [Plaintiff] was not home." *Id*.   Plaintiff alleges that in response she submitted "video surveillance proving that she was at home" and "a doctor's note" reporting that she was found to be "fully disabled and was on prescriptions [sic] medications that caused drowsiness and dizziness." *Id*. at 6.

Nevertheless, Plaintiff alleges that "the Correction Department found the evidence insufficient and suspended [her] for 10 days." *Id*.   On October 5, 2020, two days after receiving the note, Plaintiff alleges that she was visited by Calloway and "ordered to surrender her shield and ID because she was being demoted with no explanation." *Id*.

On or about October 14, 2020, Plaintiff alleges that she "put in a request for disability retirement through the New York City Employees Retirement System." *Id*.   Plaintiff alleges that

"On October 1, 2020 the Correction Department informed [her] of its intent to pursue Medical Separation Termination." *Id*. As it appears from Plaintiff's complaint that this notification came after Plaintiff's request for disability retirement, the October 1 date provided by Plaintiff in her SAC appears to be a typo. On January 6, 2022, Plaintiff was informed that her October 14, 2020, application for disability retirement was approved. *Id*.

Plaintiff alleges that "[t]he series of retaliatory acts from the Corrections Department and its agents was a result of Skrine's initial EEO complaint in May 2019." *Id*. Plaintiff alleges that she filed a subsequent "EEO Complaint for retaliation and received a NOTICE OF RIGHT TO SUE WITHIN 90 DAYS dated April 12, 2022." *Id*.

## LEGAL STANDARDS

The City moves to dismiss the complaint as partially time barred and for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6) provides for dismissal on the basis of "failure to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). "To survive a motion to dismiss, Plaintiff's complaint must meet the *Iqbal-Twombly* pleading standard and 'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, this Court must "accept[] as true factual allegations made in the complaint, […] drawing all reasonable inferences in favor of the plaintiffs." *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

4

**DISCUSSION**

**A.  Plaintiff's Claims are Not Time-Barred**

In its motion to dismiss, the City contends that Plaintiff's claims "under the ADA, FMLA, SHRL, and CHRL that accrued prior to July 8, 2019, are barred by the three-year statute of limitations" and that Plaintiff's Title VII claims that accrued prior to September 16, 2020, are time-barred.  MOL at 3-4.  Though these arguments may apply to the claims Plaintiff voluntarily dismissed with prejudice in her September 15, 2023 Letter, they do not apply to Plaintiff's sole remaining claims against the city, which sound in retaliation.  The purportedly retaliatory acts that Plaintiff challenges occurred on October 3 and October 5, 2020, and therefore Plaintiff's remaining retaliation claims are not time-barred.

**B.  Title VII and NYSHRL Retaliation**

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007).  "Protected activity includes opposing an unlawful employment practice or otherwise making a charge, testifying, assisting, or participating 'in any manner in an investigation, proceeding, or hearing.'"  *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023). "Retaliation claims brought under the NYSHRL and § 1981 are subject to the same standards as federal claims under Title VII."  *Id*.

The City contends that Plaintiff has failed to adequately allege a causal connection between any protected activity and any adverse action.  "Proof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment,

or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987) (cleaned up) (emphasis in original).

Plaintiff contends in her complaint that the alleged retaliation she faced "was a result of Skrine's initial EEO complaint in May 2019." Compl. at 6. The purported retaliation, however, occurred in October of 2020—approximately 17 months after Plaintiff's alleged protected activity. Though temporal proximity can in itself establish causation, and though "[t]here is no firm outer limit to the temporal proximity required," "most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *Sosa v. New York City Dep't of Educ.*, 18-CV-411(PKC)(SJB), 2020 WL 1536348, at *6 (E.D.N.Y. Mar. 31, 2020) (quoting *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019)). "Motions to dismiss have been granted when the temporal proximity exceeds one year." *Id*.

A lengthy lapse between protected activity and purported retaliation is not in and of itself dispositive where a plaintiff's allegations include other indicia of retaliatory animus. "Where temporal proximity is not the only evidence that bears on a causal connection, we have recognized that the lapse in time between the protected activity and adverse action can be longer." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 277–78 (2d Cir. 2023). Where the facts indicate that a lengthy lapse represent an employer "waiting for the opportune time to retaliate," a retaliation claim may proceed despite the lack of temporal proximity. *Sosa*, 2020 WL 1536348, at *6. Likewise, direct "evidence of retaliatory animus" may buttress a claim for retaliation even where temporal proximity is lacking. *DeCintio*, 821 F.2d at 115.

6

In *DeCintio*, the court found that because the justification for the purportedly retaliatory action taken against the plaintiff was allegedly pretextual in nature—others who engaged in identical behavior were not disciplined for the same conduct—plaintiff had adequately alleged direct and indirect evidence of retaliation.  821 F.2d at 115 ("In the instant case, appellant brought before the district court evidence that he was a plaintiff in a Title VII action then pending against appellees, and that appellees (through their supervisory personnel) knew of appellant's activities. DeCintio further showed that he was fired within one year of the filing of the original Title VII action. Finally, DeCintio proffered, through party admissions of Jeffrey Sweet and Edward Stolzenberg, and through the statements of fellow employees that they were not disciplined for engaging in identical behavior, direct and indirect evidence of a causal connection between protected activity and retaliation.")

Here, Plaintiff alleges that she faced a demotion and suspension on patently pretextual grounds: she alleges that she was punished for not being at home during a home visit despite submitting video evidence disproving that allegation.  Given Plaintiff's allegations that she was subjected to three or four home visits a week during her period of medical leave and then was disciplined on purely pretextual grounds, Plaintiff has adequately alleged at the pleading stage that Defendants were "waiting for the opportune time to retaliate," and then took adverse action against Plaintiff under circumstances that indicate retaliatory animus.  *Sosa*, 2020 WL 1536348, at *6. This suffices to plead a retaliation claim despite the 17-month lapse between Plaintiff's alleged protected activity and the purported retaliation.

## C.  NYCHRL Retaliation

The standard for NYCHRL retaliation is more permissive than that for Title VII and NYSHRL retaliation.  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must

show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Sce v. City of New York*, 20-3954-CV, 2022 WL 598974, at *3 (2d Cir. Mar. 1, 2022). "It is true that NYCHRL claims 'must be reviewed independently from and 'more liberally' than' NYSHRL claims. However, the NYCHRL still requires plaintiffs to plead both a protected activity and a causal connection in order to state a retaliation claim." *Buchanan v. City of New York*, 556 F. Supp. 3d 346, 369 (S.D.N.Y. 2021).

Because Plaintiff has adequately alleged retaliation pursuant to Title VII and the NYSHRL, she has also adequately alleged retaliation under the NYCHRL.

**D.   FMLA Interference and Retaliation**

"The Second Circuit has analyzed FMLA and ADA retaliation claims under the same framework employed in Title VII cases, that (1) the plaintiff engaged in a protected activity, (2) the employer had knowledge of the activity, (3) the employer took an adverse action against the plaintiff, and (4) a causal connection exists between the adverse action and the protected activity. While this standard applies to ADA retaliation cases, the Second Circuit has also articulated a slightly different standard to establish a prima facie FMLA retaliation claim, that (1) the plaintiff engaged in a protected activity by exercising rights under the FMLA, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Fukelman v. Delta Air Lines, Inc.*, 18-CV-2 (PKC)(PK), 2020 WL 4587496, at *18 (E.D.N.Y. Apr. 13, 2020), *report and recommendation adopted*, 18-CV-00002(PKC)(PK), 2020 WL 2781662 (E.D.N.Y. May 29, 2020).

Defendants allege that because Plaintiff alleges that she was fully disabled, she therefore was not qualified for her position and cannot proceed with her FMLA retaliation claim. "To satisfy the second element of the [McDonnell Douglas prima facie case, [plaintiff] need not demonstrate that h[er] performance was flawless or superior. Rather, [s]he need only demonstrate that [s]he 'possesses the basic skills necessary for performance of [the] job.'" *De la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996). "A plaintiff's burden to show that she is 'qualified' is 'minimal'." *McFarlane v. Chao*, 04-CV-4871(GBD)(HBP), 2007 WL 1017604, at *21 (S.D.N.Y. Mar. 30, 2007). "The relevant time for determining whether a plaintiff is 'qualified' is the date of the allegedly adverse employment action." *Id.* at *22.

"The FMLA allows for twelve weeks of leave during any twelve-month period." *Reid v. Time Warner Cable New York City LLC*, 14-CV-3241DLIRML, 2018 WL 1701932, at *9 (E.D.N.Y. Mar. 30, 2018). In general, an FMLA retaliation or interference claim cannot proceed if, at the time of the allegedly adverse action, the plaintiff had already taken their twelve weeks of protected leave and was unable to return to work. *See Vangas v. Montefiore Med. Ctr.*, 925 F. Supp. 2d 574, 578 (S.D.N.Y. 2013) ("Generally, then, when an employee has received his or her twelve weeks of leave in a given year and is fired for being unable to return to work, no interference claim may be maintained."); *Benitez v. Valentino U.S.A., Inc.*, 19-CV-11463 (JGLC), 2024 WL 1347725, at *15 (S.D.N.Y. Mar. 29, 2024) ("Because, according to Learmont, she was unable to return to Valentino at the expiration of her FMLA leave without taking additional leave to address her serious health condition, she was not qualified for her position as a matter of law.").

Here, Plaintiff's period of leave well exceeded the 12 weeks that are protected under the FMLA. Plaintiff contends, however, that because the City "obviously approved of her taking extended full-time medical leave," the extended nature of her medical leave should not defeat her

FMLA claims.  Opp. at 13 n.2.  In support, Plaintiff cites *Stoler v. Inst. for Integrative Nutrition*, wherein the court found that a defendant's express approval of an extended medical leave permitted a FMLA interference claim to proceed despite the extended nature of the plaintiff's period of leave.  13-CV-1275, 2013 WL 6068598, at *9 (S.D.N.Y. Nov. 18, 2013) ("Defendants assert that Stoler's FMLA rights were vitiated because she extended her leave an additional two weeks on top of her 12 weeks of leave provided under the FMLA.  However, Stoler asked for an extension of leave from UN, and Rosenthal approved it without telling Stoler her FMLA rights would be affected.  Stoler also agreed to attend weekly UN meetings before the end of her FMLA leave.  FMLA coverage applies to a plaintiff who has taken, with her employer's permission, a leave greater than 12 weeks, and Stoler did not vitiate her FMLA rights simply by taking an approved extension of leave.") (cleaned up).

However, the same circumstances that were dispositive in *Stoler* are not present here. Plaintiff does not allege that she requested and was approved to take an extended medical leave. Instead, Plaintiff merely alleges that she "took medical leave in August 2019" and "was never able to return to work."  SAC at 5.  Given that Plaintiff fails to allege that Defendants approved a period of leave longer than 12 weeks, or otherwise mislead Plaintiff as to the duration or terms of her leave, Plaintiff cannot rely on *Stoler* to substantiate her FMLA claims.  See *Reid v. Time Warner Cable New York City LLC*, 14-CV-3241(DLI)(RML), 2018 WL 1701932, at *9 (E.D.N.Y. Mar. 30, 2018) ("In contrast, Plaintiff here does not allege that Defendant provided him with misleading information about the length of his leave.  Plaintiff offers no reason why he believed that he was entitled to twenty-one weeks of leave under the FMLA, let alone that Defendant was responsible for that belief. Accordingly, Plaintiff's claims for interference and retaliation pursuant to the FMLA are dismissed.").

Because Plaintiff alleges that she was fully disabled and unable to return to work at the time of the adverse action taken against her, and because that adverse action was taken after Plaintiff had already taken more than 12 weeks of medical leave, Plaintiff's claims pursuant to the FMLA must be dismissed.

**E.   ADA Discrimination**

In her opposition, Plaintiff stated that she "does not oppose the City's motion to dismiss the Second Claim for Relief for discrimination in violation of the Americans With Disabilities Act." Opp. at 4 n.1.  Accordingly, for the reasons stated in the City's motion to dismiss, the Court dismisses Plaintiff's claim for discrimination in violation of the ADA.

**CONCLUSION**

For the reasons set forth above, the City's motion to dismiss is granted as to Plaintiff's FMLA retaliation and interference claims, granted as to Plaintiff's claim for discrimination in violation of the ADA, and denied as to Plaintiff's retaliation claims brought under Title VII, the NYSHRL, and the NYCHRL.

    **SO ORDERED.**

                                                /s/
                                        ORELIA E. MERCHANT
                                        United States District Judge

Dated: Brooklyn, New York
       August 26, 2024